**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

SAMANTHA C. MILNER-KOONCE,

                        Plaintiff,

      v.

ALBANY CITY SCHOOL DISTRICT, et al.,

                   Defendants.

No. 1:21-CV-1271
(LEK/CFH)

─────────────────────────────

**APPEARANCES:**

Samantha C. Milner-Koonce
58 Kent Street
Albany, New York 12206
Plaintiff pro se

## REPORT-RECOMMENDATION and ORDER

### I. Background

Plaintiff pro se Samantha C. Milner-Koonce ("plaintiff") commenced this action on November 29, 2021, with the filing a complaint and an application to proceed in forma pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 2. In a Report-Recommendation and Order dated May 12, 2022, the undersigned: (1) granted plaintiff's IFP application; (2) ordered that plaintiff's Americans with Disabilities Act ("ADA") retaliation claim and Family Medical Leave Act ("FMLA") claim against defendant Albany City School District ("School District") proceed; (3) recommended that plaintiff's claims against the School District for discrimination under the ADA, Equal Pay Act ("EPA"), Genetic Information Nondiscrimination Act ("GINA"), and Title VII, and state law intentional infliction of

emotional distress claim be dismissed without prejudice and with leave to amend; and (4) recommended that the claims against defendant Honeywell Law Firm be dismissed with prejudice and without leave to amend.  <u>See</u> Dkt. No. 5.  Plaintiff filed objections to the Report-Recommendation and Order, <u>see</u> Dkt. No. 7, and on June 29, 2022, Senior District Judge Kahn adopted the Report-Recommendation and Order in its entirety.  <u>See</u> Dkt. No. 9.  Presently before the Court is plaintiff's amended complaint for review pursuant to 28 U.S.C. § 1915.  <u>See</u> Dkt. No. 10 ("Am. Compl.").

## II. Initial Review of Amended Complaint

### A. Legal Standard

Section 1915[1] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds <u>pro se</u>, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they

---

[1] The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. <u>See</u> 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. <u>See, e.g.</u>, <u>Fridman v. City of N.Y.</u>, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted).  This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a

demand for the relief sought . . . ." FED. R. CIV. P. 8(a)(1), (3).  Although "[n]o technical

form is required," the Federal Rules make clear that each allegation contained in the

pleading "must be simple, concise, and direct."  Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered
> paragraphs, each limited as far as practicable to a single set
> of circumstances.  A later pleading may refer by number to a
> paragraph in an earlier pleading.  If doing so would promote
> clarity, each claim founded on a separate transaction or
> occurrence – and each defense other than a denial – must
> be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of

identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189

F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to

comply with the pleading requirements "presents far too [] heavy [a] burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D.

352, 355 (N.D.N.Y. 1996).  The Second Circuit has held that "[w]hen a complaint does

not comply with the requirement that it be short and plain, the court has the power, on

its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42

(2d Cir. 1988) (citation omitted).  However, "[d]ismissal . . . is usually reserved for those

cases in which the complaint is so confused, ambiguous, vague, or otherwise

unintelligible that its true substance, if any, is well disguised."  Id. (citation omitted).  If

dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff

leave to amend the complaint.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir.

1995).

## B. Plaintiff's Amended Complaint

Plaintiff's amended complaint is nearly identical to her original complaint, with the only cognizable differences being (1) she describes her disabilities and a workplace incident that resulted in her needing to take medical leave, and (2) she names individual defendants and does not explicitly name the School District as a defendant. See Am. Comp. at 2-7. In summary, plaintiff contends that Kaweeda Adams, the Superintendent of the School District; Lori McKenna, the "Assistant Superintendent of Middle School"; Matthew Petrin, a Human Resources Administrator; Andrea West, a Human Resources Assistant Administrator; and William Rivers, the Stephen and Harriet Myers Middle School Principal discriminated and retaliated against plaintiff because of her numerous disabilities and her use of medical leave. See id. at 2. Plaintiff asserts that on May 17, 2018, to separate students during a fight, plaintiff was forced to hold a door closed using her hands, back, buttocks, and left shoulder, hip, and foot. See id. at 3-4, ¶ 7. Plaintiff states that she suffers from anxiety, depression, a blood clot disorder, and shoulder, back, neck, and knee impairments. See id. at 4-7, ¶¶ 9-26. Plaintiff seeks "general damages," punitive damages, and payment for "all filing fees, services and or other fees associated with the filing of this claim." Id. at 40-41. Plaintiff asserts (1) discrimination, retaliation, and hostile work environment claims under the ADA; (2) a Title VII discrimination claim; (3) an FMLA claim; (4) a GINA claim; (5) discrimination, retaliation, and hostile work environment claims under the New York State Human Rights Law ("NYSHRL"); and (6) parallel claims under the New York City Human Rights Law ("NYCHR"). See id. at 1, 36.[2]

---

[2] For a complete recitation of the facts, the undersigned incorporates by reference its May 12, 2022, Report-Recommendation and Order. See Dkt. No. 5 at 4-15. To the extent plaintiff's amended complaint

In plaintiff's list of defendants, she does not name "Albany City School District" and lists only the individual defendants.  Am. Compl. at 2.  However, plaintiff lists the individual defendants' addresses as the School District, she repleads factual allegations directly against the School District, and she seeks, in part, "[g]eneral damages, for the failure to act, intervene, and or regulate, the bullying, harassment, pain and suffering plaintiff endured during the 2020-2021 school year under the supervision of principal Rivers and at the hands of Albany City School District[.]"  Id. at 40, ¶ 184 (emphasis omitted).  Given the special solicitude afforded to pro se plaintiffs, the undersigned construes plaintiff's amended complaint as against the five-named individual defendants and the School District.  As such, the Clerk of Court is ordered to reinstate the School District as a defendant on the docket.

### C.  Analysis[3]

### 1.  ADA Retaliation Claim and FMLA Claim against the School District

Following initial review of plaintiff's original complaint, Judge Khan adopted the undersigned's Report-Recommendation and Order and ordered that plaintiff's ADA retaliation claim and FMLA claim proceed.  See Dkt. No. 9 at 12; see also Dkt. No 5 at 30.  Plaintiff has sufficiently realleged the supporting facts for both claims in her amended complaint; therefore, the undersigned need not address those claims against the School District already permitted to proceed.  The undersigned makes no determination on the merits of either claim.

---

contains additional allegations, they will be addressed in the undersigned's analysis of the relevant claims.
[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

## 2. Title VII Claim

Plaintiff states that "[t]his is a civil action seeking judgment, relief and/or damages brought pursuant to the Employment Discrimination Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination based on national origin."  Am. Compl. at 1, ¶ 1.  As an initial matter, "individual defendants cannot be held personally liable under Title VII."  Chauca v. Abraham, 841 F.3d 86, 89, n.1 (2d Cir.) (citation omitted), as amended (Nov. 8, 2016), certified question accepted, 68 N.E.3d 76 (2016), and certified question answered, 89 N.E.3d 475 (2017).  As such, it is recommended that the purported Title VII claim against the individual defendants be dismissed with prejudice.  See Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (affirming the district court's dismissal of "Title VII claims against the individual defendants.").

As against the School District, "Title VII provides, in relevant part, that '[i]t shall be an unlawful employment practice for an employer' to take adverse action against an employee because of that employee's 'race, color, religion, sex, or national origin.'"  Vill. of Freeport v. Barrella, 814 F.3d 594, 606 (2d Cir. 2016) (quoting 42 U.S.C. § 2000e-2(a)).  "The Supreme Court has defined 'national origin' in this context to mean 'the country where a person was born, or, more broadly, the country from which his or her ancestors came.'"  Shah v. Wilco Sys., Inc., 76 F. App'x 383, 385 (2d Cir. 2003) (summary order) (quoting Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973)) (affirming dismissal of Title VII claims where the plaintiff "conceded that her national origin is Indian, even though she is a naturalized American citizen.  [The plaintiff] can, therefore, claim only national origin discrimination as an Indian, rather than as an American.  Yet she alleges only discrimination against her as an American.  Even if we

were to look to whether [the defendant] perceived [the plaintiff] as being of American national origin, [the plaintiff] has not alleged that [the defendant] so perceived her.").

In her original complaint, plaintiff did not specify the protected class under which she was seeking to bring her Title VII claim.  See generally Compl.; see also Dkt. No. 5 at 22-23.  In her amended complaint, plaintiff specifies that she seeks to bring a claim under Title VII "for employment discrimination based on national origin."  Am. Compl. at 1, ¶ 1.  Plaintiff includes a header in her factual recitation titled, "Malfeasance, Misfeasance and Nonfeasance, Americans with Disability Act (ADA) – Title VII of the Civil Rights Act[.]"  Id. at 34.  Plaintiff does not, however, state what her national origin is.  See generally Am. Compl; see Lee v. Sony BMG Music Ent., Inc., 557 F. Supp. 2d 418, 424 (S.D.N.Y. 2008) (dismissing "national origin-based discrimination claims brought under state, local and federal law" because the "[p]laintiff does not plead what her national origin is, so the Court cannot assess whether plaintiff states a claim for national origin discrimination."); Sealy v. State Univ. of N.Y. At Stony Brook, 408 F. Supp. 3d 218, 224-25 (E.D.N.Y. 2019) (dismissing Title VII claim because the "[p]laintiff's [] complaint does not even include information identifying his national origin, or the nationality of those [the p]laintiff claims were treated more favorably than him."), aff'd, 834 F. App'x 611 (2d Cir. 2020) (summary order).  Further, there are no allegations in plaintiff's amended complaint that indicate that the School District's actions were because of plaintiff's undefined national origin.  See generally Am. Compl.; see Lebowitz v. N.Y.C.  Dep't of Educ., 407 F. Supp. 3d 158, 176 (E.D.N.Y. 2017) (explaining that the "[p]laintiffs fail to plead any additional facts that would suggest that [the d]efendants placed [took adverse actions] because [a plaintiff] is Russian.").  As

such, it is recommended that any purported Title VII claim based on national origin be dismissed with prejudice.

### 3.  GINA Claim

Under GINA, it is "an unlawful employment practice for an employer 'to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee.'" Welch v. Bio-Reference Lab'ys, Inc., No. 1:19-CV-846 (BKS/DJS), 2019 WL 4805533, at *2 (N.D.N.Y. Oct. 1, 2019) (quoting 42 U.S.C. § 2000ff-1(a)(1)), report and recommendation adopted, 2019 WL 6134359 (N.D.N.Y. Nov. 19, 2019); see Dkt. No. 5 at 23-24.  "Genetic information is defined as 'information about—(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual.'" Allen v. Verizon Wireless, No. 3:12-CV-482 (JCH), 2013 WL 2467923, at *23 (D. Conn. June 6, 2013) (quoting 42 U.S.C. § 2000ff).  "To state a claim under GINA, [the p]laintiff must allege '(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from [the p]laintiff's genetic tests.'" Welch, 2019 WL 4805533, at *2 (citations omitted).

As to the individual defendants, research has not revealed a case within the Second Circuit that has addressed individual liability under GINA.  However, district courts in other circuits have explained that "[b]ecause GINA incorporates the Title VII definition of 'employer,' . . . GINA has also been held not to provide for individual liability." Kirkman v. Faurecia Emissions Control Techs., Inc., No. 1:19-CV-00069 (SNLJ), 2020 WL 1275618, at *4 (E.D. Mo. Mar. 17, 2020) (collecting cases); see also

9

Harrison v. City of Baton Rouge-Par. of E. Baton Rouge, No. 17-CV-487 (JWD/RLB), 2019 WL 1757553, at *4 (M.D. La. Apr. 3, 2019) (footnote omitted) ("The [c]ourt recommends that all of [the p]laintiff's claims against the individual Directors of the City [d]efendants be dismissed with prejudice as there is no individual liability under any of the remaining federal statutes (GINA, Title VII, and the ADA)."), report and recommendation adopted, 2019 WL 1756534 (M.D. La. Apr. 19, 2019).  The undersigned agrees that because GINA adopts Title VII's definition of "employer" and there is no individual liability under Title VII, there is no individual liability under GINA. See 42 U.S.C. § 2000ff(2)(B)(i) ("The term "employer" means--(i) an employer (as defined in section 2000e(b) of this title)); 42 U.S.C. § 2000e(b) (Title VII's definition of employer).  Thus, the undersigned recommends dismissing plaintiff's GINA claim against the individual defendants with prejudice.

Plaintiff contends that "Ms. West was aware of plaintiff's grandson being diagnosed with ADHD, Impulse Disorder, a Learning Disability, Anxiety and Depression (Special needs she stated) she assumed plaintiff as well could possibly be genetically challenged or have 'special needs'."  Am. Compl. at 40, ¶ 185.  Plaintiff states that Ms. West asked plaintiff is she knew what "intermittent meant.  Plaintiff was taken aback and went silent for a brief moment as she was shocked at Ms. West question.  Plaintiff felt Ms. West was challenging her intelligence as did Mr. Rivers."  Id. at ¶ 186.  Plaintiff asserts that "Ms. West also knows plaintiff holds a General Equivalency Diploma instead of a high school diploma.  Once again Ms. West played with the knowledge[] she possessed to play upon plaintiff[']s[] intelligence just as she did when she made [plaintiff] believe she was concerned about her comfortability."  Id. at ¶ 187.

"[E]vidence of a family member's disease diagnosis is only considered 'genetic information' if used to determine the likelihood of disease in another individual." <u>Allen</u>, 2013 WL 2467923, at *23.  "It is not considered 'genetic information' if it 'is taken into account only with respect to the individual in which such disease or disorder occurs and not as genetic information with respect to any other individual.'" <u>Id.</u> (quoting <u>Poore v. Peterbilt of Bristol, LLC</u>, 852 F. Supp. 2d 727, 731 (W.D. Va. 2012) (determining that the plaintiff's "Complaint fails to state a violation of GINA because . . . there is no allegation that [the defendant] used [the plaintiff's] wife's diagnosis to forecast the tendency of any other individual to contract multiple sclerosis . . . .").  "For discrimination based on family medical history to violate GINA, the family medical condition must have a genetic predisposition and the employer must have believed that the medical information at issue had a genetic basis." <u>Baum v. Dunmire Prop. Mgmt.</u>, Inc., No. 21-CV-00964 (CMA/NYW), 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022); <u>see also</u> <u>Tedesco v. Pearson Educ., Inc.</u>, No. 21-CV-199, 2021 WL 2291148, at *6 (E.D. La. June 4, 2021) (dismissing GINA claim because the plaintiff did not allege that the purported "disease at issue," suicide, "had a genetic cause.").

Plaintiff fails to state a claim for relief under GINA because (1) there is no allegation or indication that plaintiff's grandson's ADHD, learning disability, anxiety, or depression are genetic; (2) there is no support in the Amended Complaint for plaintiff's assertion that Ms. West "assumed plaintiff as well could possibly be genetically challenged"; and (3) there is no allegation that the School District took actions against plaintiff because of genetic information.  Am. Compl. at 40, ¶ 185; <u>see also</u> <u>Iwaniszek v. Pride Transp., Inc.</u>, No. 2:17-CV-02918 (JCM/BNW), 2021 WL 634991, at *6 (D. Nev.

Feb. 17, 2021) ("[The] plaintiff alleges no facts showing that he was discriminated against based on his or his family's genetic tests or diseases that run in his family.  He does not explain how any discriminatory conduct is related to his genetic information."). As such, the undersigned recommends dismissing plaintiff's GINA claim against the School District with prejudice.

### 4.  ADA Claims against Individual Defendants

The Second Circuit has not explicitly addressed whether there is individual liability under Title I of the ADA.  See Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc., 531 F. Supp. 3d 522, 535 (N.D.N.Y. 2021) ("Although the Circuit has been less forthcoming about individual liability under the ADA, at the least it has held that its retaliation provision borrows from Title VII to such an extent that individual liability is also unavailable to retaliation claims.") (citing Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) (holding that "the retaliation provision of the ADA . . . cannot provide for individual liability")).  However, "[b]ased on the Second Circuit's guidance thus far, district courts under its supervision have routinely held that there is no individual liability at all under the ADA[.]"  Sears-Barnett, 531 F. Supp. 3d at 535; see also Arcuri v. Schoch, No. 6:15-CV-0798 (DNH/TWD), 2015 WL 5652336, at *5 (N.D.N.Y. Sept. 24, 2015) (collecting cases) ("Although the Second Circuit has yet to explicitly address [the issue], many district courts in this circuit, as well as other circuit courts, have held that individual defendants may not be held personally liable for alleged violations of Title I of the ADA.").  As the Second Circuit has not stated otherwise and in line with the district courts concluding as such, the undersigned recommends dismissing the purported ADA claims against the individual defendants as there is no individual liability under the ADA. See Stanford v. N.Y.S. Off. of Child. & Fam. Servs., No. 1:17-CV-1000 (MAD/CFH),

2017 WL 10299121, at *5 (N.D.N.Y. Oct. 24, 2017) ("[I]nsofar as plaintiff seeks to bring

ADA claims against the individual defendants, it is recommended that all such claims be

dismissed with prejudice."), report and recommendation adopted, 2018 WL 3031844

(N.D.N.Y. June 19, 2018); Gandhi v. NYS Unified Ct. Sys., No. 1:20-CV-120 (LEK/DJS),

2020 WL 1169355, at *3 (N.D.N.Y. Mar. 11, 2020) ("[T]he Court recommends that [the

p]laintiff's claim under the ADA against the individual [d]efendants be dismissed

because individuals are not subject to liability under Title I of the ADA."), report and

recommendation adopted, 2020 WL 2124140 (N.D.N.Y. May 5, 2020).

### 5. FMLA Claim against Individual Defendants

"Section 2615(a)(1) of the FMLA states that '[i]t shall be unlawful for any

employer to interfere with, restrain, or deny the exercise of or the attempt to exercise,

any right provided under this subchapter.'" Potenza v. City of N.Y., 365 F.3d 165, 167

(2d Cir. 2004) (quoting 29 U.S.C. § 2615(a)(1)).

> The regulations promulgated pursuant to the FMLA explain that
> "'[i]nterfering' with the exercise of an employee's rights would include, for
> example, not only refusing to authorize FMLA leave, but discouraging an
> employee from using such leave," and that "[a]n employer is prohibited
> from discriminating against employees or prospective employees who
> have used FMLA leave."

Id. (quoting 29 C.F.R. § 825.220(b), (c)) (alterations in original).  "An individual may be

held liable under the FMLA only if [he or] she is an 'employer,' which is defined as

encompassing 'any person who acts, directly or indirectly, in the interest of an employer

to any of the employees of such employer[.]'" Graziadio v. Culinary Inst. of Am., 817

F.3d 415, 422 (2d Cir. 2016) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I); citing 29 C.F.R.

§ 825.104(d)).  The inquiry is "whether the alleged employer possessed the power to

control the worker in question, with an eye to the economic reality presented by the

13

facts of each case." Id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)).  To answer this inquiry, the Court should "consider a nonexclusive and overlapping set of factors intended to encompass the totality of circumstances,": "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citation omitted).  "No one of the four factors standing alone is dispositive . . . and any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." Id. at 422-23 (citation omitted).  "In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer 'controlled in whole or in part [the] plaintiff's rights under the FMLA.'" Id. at 423 (citation omitted).

"Under these principles, individual liability is not limited to those who grant or deny a leave but may extend to those who participate in retaliation for the exercise of FMLA benefits." Ziccarelli v. NYU Hosps. Ctr., No. 15-CV-9307 (JGK), 2021 WL 797668, at *8 (S.D.N.Y. Feb. 27, 2021) (collecting cases) (determining that two defendants were "employers" under the FMLA because one individual "updated" the plaintiff "on the status of his leave" and "the crux of his FMLA interference claim is that because of" the defendants' actions, the plaintiff "was compelled to cut his first leave short[]" and the two defendants were "involved in [the plaintiff's] review and testified to the meaningful role she played in the reorganization of the [] department"; but an individual who had a single act of supervision by "assign[ing the plaintiff] one difficult task and, when he failed to perform, she reported it to" the other two defendants, "and

directed them to note this on his record[]" was not an "employer"); cf. Sutter v. Dibello,

No. 18-CV-817(SJF/AKT), 2021 WL 930459, at *17 (E.D.N.Y. Mar. 10, 2021) (quoting

Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 475-76 (S.D.N.Y. 2011) ("Since 'the

economic reality test is a factual inquiry that does not bear on the sufficiency of

pleadings, . . . to survive a motion to dismiss, [the p]laintiff need not allege sufficient

facts to satisfy the economic reality test; instead, he must simply plead that the

proposed Individual Defendants had substantial control over the aspects of employment

alleged to have been violated.'")).

### a. Defendants Adams, McKenna, and Petrin

Ms. Adams is the Superintendent for the School District, Ms. McKenna is the

"Assistant Superintendent of Middle School," and Mr. Petrin is the Human Resources

Administrator.  Am. Compl. at 2, ¶ 3.  Plaintiff's allegations concerning Ms. Adams

consist solely of her contention that Mr. Rivers stated he was going to submit his

"Counseling Memorandum" to Ms. Adams and plaintiff emailed her response to the

memorandum, by "CC", to Ms. Adams.  Id. at 27, ¶ 109; 28, ¶ 117; 35, ¶ 151.  As to Ms.

McKenna, Mr. Rivers and plaintiff e-mailed, by "CC", Ms. McKenna concerning the

"Counseling Memorandum" and response, and Mr. Rivers stated that he was going to

formally submit his memorandum to her.  See id. at 27, ¶ 109; 28, ¶ 117.  There are no

other factual allegations concerning either individual that indicates that they had any

control over plaintiff's leave requests, work duties, pay, or transfer.  See generally Am.

Compl.  As such, it is recommended that plaintiff's FMLA claims against individual

defendants Adams and McKenna be dismissed without prejudice.

As to Mr. Petrin, in November 2020, plaintiff complained to Ms. West that she received medical leave information to her e-mail and stated that she was only supported to receive that information via U.S Postal mail.  See Am. Compl. at 11, ¶ 44.  Plaintiff e-mailed her complaint to Mr. Petrin, via "CC".  See id.  Plaintiff also states that on January 22, 2021, she spoke to Mr. Rivers about whether her increase in job responsibilities was accompanied with a pay raise, and he stated that it "was an HR issue[.]"  Id. at 9-10, ¶ 39.  In her e-mailed response to Mr. Rivers' "Counseling Memorandum," on April 5, 2021, plaintiff recited her recollection from the January meeting: Mr. Rivers told plaintiff to reach out to Mr. Petrin if she wanted to discuss a raise and she advised Mr. Rivers that she would reach out to Mr. Petrin.  Id. at 27, ¶ 109; 31, ¶ 132.  Mr. Rivers and plaintiff also e-mailed, via "CC", Mr. Petrin their respective "Counseling Memorandum" and response.  See id. at 27, ¶ 109; 34, ¶ 151.  Mr. Rivers also stated that he was going to submit the memorandum to Mr. Petrin.  See id. at 28, ¶ 117.

Plaintiff has not alleged that Mr. Petrin had any control over the aspects of her employment that she contends were violated such as her pay, work responsibilities, requests for medical leave, or transfer.  See generally Am. Compl.; see also Sutter, 2021 WL 930459, at *17.  As such, the undersigned recommends dismissing the purported FMLA claim against individual defendant Petrin without prejudice.

**b.  Defendants West and Rivers**

As to individual defendants West and Rivers, plaintiff has sufficiently plead their control over her conditions of employment such that the undersigned recommends allowing the FMLA claim against them to proceed.  Plaintiff states that Ms. West is the

Human Resource Assistant Administrator and Mr. Rivers is the Stephen and Myers Middle School Principal. <u>See</u> Am. Compl. at 2, ¶ 3. Plaintiff alleges that Ms. West communicated when plaintiff's leave requests were granted or denied; "provided plaintiff with a lecture, performance expectations and then proceeded to inform plaintiff of her being paid" for specific days; sent to plaintiff a list of work expectations; informed plaintiff when her leave had run out and that she was not allowed to take leave intermittently; and discussed plaintiff's transfer possibilities. <u>Id.</u> at 11, ¶¶ 42-44, 46; 13, ¶ 52; 17-18, ¶¶ 74-75; 36-37; ¶¶ 159-64. As to Mr. Rivers, plaintiff contends that he signed her out of the online time management system for a workday; he provided her lists of job expectations; he informed her of when she was out of available medical leave; and he told her that all concerns regarding medical leave and requests to leave work early should go through him and the administration. <u>See id.</u> at 12, ¶ 48; 16, ¶ 67, 26, ¶ 107; 28, ¶ 116. At this early stage, the undersigned concludes that these allegations are sufficient to establish individual liability and recommends allowing the FMLA claim to proceed against defendants West and Rivers.

### 6. NYCHRL Claims

New York City Human Rights Law makes it "an unlawful discriminatory practice [] [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person" "[t]o refuse to hire or employ or to bar or to discharge from employment such person" or "[t]o discriminate against such person in compensation or in terms, conditions or privileges of

employment."  N.Y.C., N.Y., Code § 8-107(a)(2)-(3).  "To state a claim under the

NYCHRL, the [p]laintiff must allege that the [d]efendant discriminated against her 'within

the boundaries of New York City'."  Robles v. Cox & Co., 841 F. Supp. 2d 615, 623

(E.D.N.Y. 2012) (quoting Shah v. Wilco Sys., Inc., 806 N.Y.S.2d 553, 558 (1st Dep't

2005)) (citing Fried v. LVI Servs., Inc., No. 10-CV-9308, 2011 WL 4633985, at *12

(S.D.N.Y. Oct. 4, 2011) ("The NYCHRL expressly limits the applicability of its

protections to acts that occur within the boundaries of New York City.")).  "[T]o

determine the location of the discrimination under the NYCHRL, courts look to the

location of the impact of the offensive conduct."  Curto v. Med. World Commc'ns, Inc.,

388 F. Supp. 2d 101, 109 (E.D.N.Y.2005); see also Kraiem v. JonesTrading Institutional

Servs. LLC., 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) (citation and quotation marks

omitted) (dismissing NYCHRL claims where the alleged conduct did not occur "among

those who work in the city.").

There are no allegations in plaintiff's amended complaint concerning New York

City.  See generally Am. Compl.  As such, the undersigned recommends dismissing

plaintiff's purported NYCHRL claims with prejudice.

### 7.  Supplemental Jurisdiction Over the NYSHRL Claims

"[I]n any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the

same case or controversy under Article III of the United States Constitution."  28 U.S.C.

§ 1367(a); see Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir.

2004) (citation and quotation marks omitted) ("A state law claim forms part of the same

controversy if it and the federal claim derive from a common nucleus of operative fact.").

18

A court "may decline to exercise supplemental jurisdiction over a claim" if "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," "or [] in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  "When deciding whether to exercise supplemental jurisdiction over a claim, a district court should "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity.'"  Langella v. Mahopac Cent. Sch. Dist., No. 18-CV-10023 (NSR), 2020 WL 2836760, at *14 (S.D.N.Y. May 31, 2020) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Plaintiff's NYSHRL claims arise from the same set of facts as her ADA and FMLA claims.  See generally Am. Compl.  Judicial economy, convenience, fairness, and comity weigh in favor of the Court exercising supplemental jurisdiction as plaintiff's FMLA, ADA, and NYSHRL claims apply similar, if not identical, standards.  See Langella, 2020 WL 2836760, at *14 ("As it relates to [the p]laintiff's NYSHRL claims, the standards between the ADA, ADEA, RA, and NYSHRL are virtually identical (as discussed below) and would be applied to the same set of facts.  Moreover, because the standards are identical, deciding the NYSHRL claims would not require an investment of additional judicial resources, and there would be no comity issues triggered.") (citing Oliver v. N.Y.S. Police, No. 1:19-CV-233 (BKS/DJS), 2020 WL 1849484, at *10 (N.D.N.Y. Apr. 13, 2020) ("However, where, as here, the 'standards of liability are identical under [federal law] and the NYSHRL[,] deciding the state-law claims does not require the investment of additional judicial resources,' and there is no

'substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar,' the Court concludes 'the values of judicial economy, convenience, fairness, and comity,' support the exercise of supplemental jurisdiction over [the p]laintiff's NYSHRL claims.")).  The undersigned is recommending that plaintiff's ADA and FMLA claims be permitted to proceed; thus, the undersigned also recommends that the Court exercise supplemental jurisdiction over the NYSHRL claims that are sufficient to survive initial review.

### 8.  ADA and NYSHRL Claims against the School District

#### a.  Discrimination

"New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."  Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 117 n.1 (2d Cir. 2004).  Thus, the undersigned will address the claims in tandem.  See, e.g., Novick v. Vill. of Wappingers Falls, N.Y., 376 F. Supp. 3d 318, 341-42 (S.D.N.Y. 2019).  Plaintiff states that defendants "[d]id not accommodate my disability[,]"  "[p]rovided me with terms and conditions of employment different from those of similar employees[,]" and "[h]arassed me or created a hostile work environment[.]"  Am. Compl. at 2, ¶ 5.

#### a.  Unequal Terms and Conditions of Employment

"To establish a prima facie case of discrimination based upon unequal terms and conditions of employment, a plaintiff must show that:" "(a) the employer is subject to the ADA; (b) she suffers from a disability within the meaning of the ADA; (c) there was an inference of discrimination; and (d) she suffered a materially adverse change in the terms or conditions of her employment."  Johnson v. City of N.Y. 326 F. Supp. 2d 364, 368 (E.D.N.Y. 2004).  "To be materially adverse[,] a change in working conditions must

be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir.1993)), abrogated on other grounds as recognized in Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 43-44 (2d Cir. 2019). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" Id. (quoting Crady, 993 F.2d at 136).

"Increased responsibilities and excessive scrutiny, without more, do not constitute an adverse employment action." Workneh v. Pall Corp., 897 F. Supp. 2d 121, 135 (E.D.N.Y. 2012) (citing Dauer v. Verizon Commc'ns Inc., 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009) (observing that "[c]ourts in this circuit have found that reprimands . . . and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation")). "Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." Hall v. N.Y.C. DOT, 701 F. Supp. 2d 318, 336 (E.D.N.Y. 2010) (internal quotations and citation omitted).

Further, "an involuntary transfer may constitute an adverse employment action if the plaintiff 'show[s] that the transfer created a materially significant disadvantage' with respect to the terms of her employment." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (citation omitted). However, "[i]f a transfer is truly lateral and

involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action[.]"  Id. (citation omitted).  "[T]he Second Circuit has held that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the plaintiff that "[she] was subjected to disparate treatment . . . [compared to persons] similarly situated in all material respects to . . . [herself]."  Fox v. State Univ. of N.Y., 686 F. Supp. 2d 225, 230 (E.D.N.Y. 2010) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).

Plaintiff's amended complaint alleges a claim for unequal terms and conditions of employment sufficient to survive initial review.  See generally Am. Compl.  Plaintiff alleges that she has multiple impairments—anxiety, depression, blood clotting disorder, and injuries to her neck, low back, left shoulder, hips, and knees—that impact her ability to walk, run, jump, sit, stand, concentrate, and remain calm.  See Am. Compl. at 4-7, ¶¶ 9-26.  Her allegations are sufficient to establish a disability under the ADA.  See Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam) (footnote omitted) ("The ADA defines 'disability' to include, among other things, 'a physical or mental impairment that substantially limits one or more major life activities.'").  Plaintiff's contends that because of plaintiff's use of medical leave and leaving work early because of pain from her disabilities, she was denied intermittent leave, signed out of work by Mr. Rivers, was not paid for her increase in job responsibilities, was required to submit a daily list of the job assignments she completed, her desk was relocated, her belongings were moved, her name was removed from her mailbox, and she was eventually forced to transfer job

locations and work different hours.  See id. at 9-10, ¶¶ 38-39, 12, ¶ 48; 15, ¶¶ 61-63; 18, ¶ 73; 25, ¶ 102.  Plaintiff asserts that Mr. Rivers threatened her job both in the March 24, 2021, meeting and in the Counseling Memorandum.  See Am. Compl. at 26, ¶ 106; 28, ¶¶ 116-17.  Plaintiff also asserts that she was transferred from Myers Middle School to "NSES" and "Thomas Obrien Academy of Science and Technology aka Toast."  Am. Compl. at 37, ¶ 160.  Plaintiff asserts that she needed a ten-month position instead of a twelve-month position to care for her grandson over the summer and the only ten-month positions were "NSES" and Delaware Elementary School.  Id.  At this early stage, this is sufficient to allege a materially adverse change to the conditions and terms of her employment.

Plaintiff does not allege direct discrimination—that anyone ever made inappropriate comments concerning a disability.  See generally Am. Compl.  However, plaintiff alleges that she was treated differently, supervised, scrutinized, her job was threatened, and she was transferred because of her use of medical leave.  See Chisholm v. Stryker, No. 22-CV-2705 (JMA/SIL), 2022 WL 3647288, at *3 (E.D.N.Y. Aug. 24, 2022) (collecting cases) ("Courts in this Circuit have routinely dismissed discrimination claims where the plaintiff's allegations . . . fail to suggest discriminatory intent.").  But see Morris v. City of N.Y., 153 F. Supp. 2d 494, 504 (S.D.N.Y. 2001) ("Given [the] defendants' overt references to [the] plaintiff's sick record, evidence of [the] defendants' knowledge that [the] plaintiff's sick days were closely related to his disability, the fact that one of [the] plaintiff's two disciplinary charges was more than eight years old at the time of the promotion decision, and the record as a whole, a jury might reasonably infer that [the] defendants' decision not to promote [the] plaintiff was

motivated, at least in part, by discrimination on the basis of a record of disability."). As this early stage, this is sufficient to state a claim for disability discrimination. Thus, it is recommended that the claim be permitted to proceed.

### b. Failure to Accommodate

Under the ADA and NYSHRL, to establish a failure to accommodate claim, plaintiff

> must show that: "(1) [s]he is a person with a disability under the meaning of the ADA [or the NYSHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

Berger v. N.Y.C. Police Dep't, 304 F. Supp. 3d 360, 368-69 (S.D.N.Y. 2018) (quoting Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir. 2015)).

Plaintiff's amended complaint has alleged a failure to accommodate claim sufficient to survive initial review. Plaintiff sufficiently alleges a disability. See supra at 22. The School District had notice of plaintiff's requests for leave as alleged through her use of medical leave and the School District "direct[ing], request[ing], and pa[ying] for" two independent medical examinations of plaintiff. Am. Compl. at 5, ¶ 21; 7, ¶ 25. Plaintiff asserts that she sought a reasonable accommodation through her requests for "intermittent leave" to attend physical therapy. Id. at 13-14, ¶ 55; see Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 414 (S.D.N.Y. 2014) ("[A] reasonable allowance of time for medical leave may, in appropriate circumstances, constitute a reasonable accommodation . . . ."). Plaintiff alleges that she was informed that "the requested leave could not be taken intermittently." Am. Compl. at 13, ¶ 54. This is

sufficient to state a claim for failure to accommodate but the undersigned makes no

determination as to the success of the claim on the merits.

### c. Hostile Work Environment

"To prevail on a hostile work environment claim, [the plaintiff] must show "(1) that

the harassment was 'sufficiently severe or pervasive to alter the conditions of [his]

employment and create an abusive working environment,' and (2) that a specific basis

exists for imputing the objectionable conduct to the employer." Fox v. Costco

Wholesale Corp., 918 F.3d 65, 74 (2d Cir. 2019) (quoting Alfano v. Costello, 294 F.3d

365, 373 (2d Cir. 2002)).  "A plaintiff alleging a hostile work environment claim under the

ADA [] 'must demonstrate either that a single incident was extraordinarily severe, or that

a series of incidents were sufficiently continuous and concerted to have altered the

conditions of her working environment.'"  Id. (quoting Alfano, 294 F.3d at 373).  The

Court should "look to the totality of the circumstances to determine whether a plaintiff

has met this burden, including proof of 'the frequency of the discriminatory conduct; its

severity; whether it [was] physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work

performance.'"  Id. (alterations in original) (quoting Harris v. Forklift Sys., Inc., 510 U.S.

17, 23 (1993)).

> Where . . . a co-worker, as opposed to a supervisor or manager, harasses
> the plaintiff, the "employer is directly liable for [the] employee's unlawful
> harassment if the employer was negligent with respect to the offensive
> behavior [,]" Vance v. Ball State Univ., 570 U.S. 421, 427 (2013), i.e., "if
> the employer failed to provide a reasonable avenue for complaint or failed
> to take appropriate remedial action" about harassment of which it knew, or
> in the exercise of reasonable care should have known.  Summa v. Hofstra
> Univ., 708 F.3d 115, 124 (2d Cir. 2013) (quotations and citation omitted).

Haggod v. Rubin & Rothman, LLC, No. 14-CV-34L (SJF/AKT), 2014 WL 6473527, at

*21 (E.D.N.Y. Nov. 17, 2014) (internal citation omitted).  "Evidence that an employer did

not monitor the workplace, failed to respond to complaints, failed to provide a system for

registering complaints, or effectively discouraged complaints from being filed would be

relevant."  Id. (citation omitted).

To state hostile work environment claim under the ADA, "[t]he plaintiff must also

allege facts suggesting that the harassing conduct was motivated by animus directed at

his disability."  Hendrix v. Pactiv LLC, 488 F. Supp. 3d 43, 53 (W.D.N.Y. 2020) (quoting

(Zako v. Encompass Digital Media, Inc., No. 19-CV-844, 2020 WL 3542323, at *13 (D.

Conn. June 30, 2020)); see also Sosa v. N.Y.C. Dep't of Educ., 368 F. Supp. 3d 489,

525 (E.D.N.Y. 2019) ("The problems with [the plaintiff's complaint] . . . imperil her

disability hostile work environment claim.  [The plaintiff] has failed to allege that the

abusive incidents were because of any disability that she had.  This claim, therefore,

must be dismissed."); Gonzalez v. City of N.Y., 377 F. Supp. 3d 273, 298 (S.D.N.Y.

2019) ("[T]he conduct that [the plaintiff] alleges in support of his hostile work

environment claim—whether considered in isolation or in the aggregate—does not meet

the requisite standard.  According to the complaint, [the defendant] failed to grant [the

plaintiff's] leave and sent him e-mails frequently. . . .  That [the plaintiff] got emails from

his boss and did not get all of the leave he requested do not suggest the kind of trauma

against which a hostile work environment claim guards.").

At this early stage, plaintiff has alleged facts concerning a hostile work

environment sufficient to survive initial review.  Plaintiff contends that Ms. Kristy Koldis

asked plaintiff to do work that plaintiff was not supposed to do and "ridiculed plaintiff for

not moving fast enough." Am. Compl. at 25, ¶100. She asserts that Mr. Rivers did not intervene upon receipt of Ms. Koldis' e-mails to plaintiff. See id. at ¶ 101. There are no allegations that Ms. Koldis' actions had any relation to plaintiff's disabilities. However, plaintiff also alleges that she was not permitted to take intermittent leave; when she returned from one stint of medical leave, her desk was changed, her belongings were missing, and her name was taken off of her mailbox; plaintiff was required to e-mail a list of the tasks she accomplished in a workday; plaintiff was sent lists of tasks to accomplish; plaintiff was required to fill out Covid-19 forms through her e-mail and told she could not complete a written form; Mr. Rivers "accused [plaintiff] of abusing time"; plaintiff would call the office and no one would answer or the phone would ring for a long time before anyone would answer; Mr. Rivers complained of plaintiff's time usage in the "Counseling Memorandum" that was sent to other individuals; and Mr. Rivers stated that plaintiff "created a 'constant disruptive, uncomfortable, and inefficient work environment.'" Id. at 13-14, ¶¶ 55-56, 14-15, ¶¶ 57-63, 18, ¶ 73; 19, ¶ 82; 21, ¶ 87-88; 25, ¶ 102-103; 26, ¶ 107; 27, ¶ 110, 113.

These allegations are sufficient for purposes of initial screening to state a hostile work environment claim based on plaintiff's disability; thus, the undersigned recommends that the claim be permitted to proceed. However, the undersigned makes no determination as to whether the claim would survive a properly supported dispositive motion.

### 5.  New York State Human Rights Law Claims

### a.  Harassment against the School District

The NYSHRL prohibits an employer from "subject[ing] any individual to harassment because of an individual's [] race, creed, color, national origin, . . . disability,

[or] predisposing genetic characteristics, . . . regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims." N.Y. Exec. Law § 296(1)(h). "Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. . . . Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared." Id.

Under this "more liberal standard" for hostile work environment claims, plaintiff has alleged sufficient information to survive initial review. Weekes v. JetBlue Airways Corp., No. 21-CV-1965 (MKB), 2022 WL 4291371, at *13 (E.D.N.Y. Sept. 16, 2022) (concluding that the plaintiff sufficiently alleged a hostile work environment claim under the NYSHRL where he "alleges[d] that [the d]efendants 'creat[ed] a hostile work environment' because of his requests for accommodation for his disability and that [the defendants], among others, treated him less well by ignoring his complaints and requests for accommodation."). As such, the undersigned recommends allowing plaintiff's hostile work environment claim under the NYSHRL to proceed.

**b. Retaliation against the School District**

Retaliation claims under the NYSHRL are governed by the same standard as ADA retaliation claims. See Cornetta v. Town of Highlands, 434 F. Supp. 3d 171, 185 (S.D.N.Y. 2020) (citations and quotation marks omitted) (citations omitted) ("The ADA prohibits employers from discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.  The NYSHRL contains a similar provision against retaliation, and is governed by the same standard[.]").  Therefore, for the same reasons stated in the undersigned's May 12, 2022, Report-Recommendation and Order, which ordered plaintiff's ADA retaliation claim to proceed, the undersigned recommends that plaintiff's NYSHRL retaliation claim against the School District be permitted to proceed.  See Dkt. No. 5 at 19-20; see also Brizzi v. Utica Mut. Ins. Co., 529 F. Supp. 3d 44, 56-57 (E.D.N.Y. 2021) (affirming and dismissing certain NYSHRL claims based on the court's determination concerning the parallel ADA claims).

### c.  Individual Defendants Discrimination, Hostile Work Environment, and Retaliation

Unlike the ADA, "[t]he NYSHRL provides for personal liability as long as the conduct that gave rise to the claim involved direct participation from the individual defendant." Malcolm v. Rochester City Sch. Dist., 388 F. Supp. 3d 257, 263 (W.D.N.Y. 2019), aff'd, 828 F. App'x 810 (2d Cir. 2020) (summary order).  "Under the NYSHRL, an individual can be liable where the defendant (i) is considered an 'employer,' or (ii) aided and abetted the unlawful discriminatory acts of others[.]"  Livingston v. City of N.Y., 563 F. Supp. 3d 201, 256 (S.D.N.Y. 2021) (quoting N.Y. Exec. Law § 296(6)).  "An individual defendant may be liable as an 'employer' under the NYSHRL 'when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others,' i.e., the power to hire or fire." Id. (quoting Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012)).  "As to [a] discrimination claim, '[a] supervisor's failure to take adequate remedial measures' in

response to a complaint of discrimination has been deemed 'actual participation' under NYSHRL § 296(6)." Imperato v. Otsego Cnty. Sheriff's Dep't, No. 3:13-CV-1594 (BKS/DEP), 2016 WL 1466545, at *28 (N.D.N.Y. Apr. 14, 2016) (quoting Parra v. City of White Plains, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014)).

Under a theory of aiding and abetting, "it is unlawful 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or to attempt to do so.'" Livingston, 563 F. Supp. 3d at 256 (quoting N.Y. Exec. Law § 296(6)). "The Second Circuit has held that 'this language allow[s] a co-worker who actually participates in the conduct giving rise to a discrimination claim to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff.'" Id. (alteration in original) (quoting Feingold v. N.Y., 366 F.3d 138, 158 (2d Cir. 2004)). "[A] plaintiff may succeed in a claim under the NYSHRL by showing the employer entity's having encouraged, condoned, or approved the discriminatory conduct of a sole employee—the same discriminatory conduct which then, perhaps 'circular[ly]', proves individual liability under the aiding and abetting provision of Section 296(6)." Johnson v. Cnty. of Nassau, 82 F. Supp. 3d 533, 536 (E.D.N.Y. 2015); see Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys., 588 F. Supp. 2d 419, 426-27 (E.D.N.Y. 2008) (acknowledging that this theory of liability "creates a strange and confusing circularity where the person who has directly perpetrated the [unlawful discrimination] only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator").

### i. Defendants Adams, McKenna, and Petrin

There are no allegations in plaintiff's amended complaint concerning Ms. Adams, Ms. McKenna, or Mr. Petrin having the authority to hire or fire plaintiff, participating in

the discriminatory or retaliatory conduct, or failing to take adequate remedial measures. See generally Am. Compl.  Plaintiff asserts that they were each aware of defendant Rivers' "Counseling Memorandum" and plaintiff's response, but this is insufficient to allege that they participated in the conduct or failed to act on it.  See id. at 27, ¶ 109; 35, ¶ 151.  Plaintiff also contends that in her "'Agreement' between Albany Public School United Employees and the Albany Public School District Dated July 1, 2015 – June 30, 2020" and "July 1, 2020 – June 30, 2024" "'[a]ny member who is being considered for a transfer initiated by the District may request an appointment with the Superintendent, or his/her designee, to discuss the matter prior to a final determination.'  Plaintiff was never afforded this opportunity as the contract/agreement states she was entitled to." Id. at 36, ¶¶ 157-58.  Plaintiff does not allege that the agreement gave Ms. Adams, the superintendent, any authority over plaintiff's transfer or that she was required, but failed, to intervene in the allegedly discriminatory or retaliatory conduct.  See generally Am. Compl.  As the amended complaint does not allege that Ms. Adams, Ms. McKenna, or Mr. Petrin had the authority to hire or fire plaintiff, directly participated in the allegedly discriminatory or retaliatory conduct, or that they had the authority to intervene and failed to do so, it is recommended that the NYSHRL claims against them be dismissed without prejudice.

### ii.  West and Rivers

Plaintiff does not allege that either Ms. West or Mr. Rivers had the authority to hire or fire plaintiff.  See generally Am. Compl.  As such, it is unlikely that they could be held directly liable under the NYSHRL.  See Schaper v. Bronx Lebanon Hosp. Ctr., 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) (explaining that "[a]lthough [the d]efendant [] was [the p]laintiff's direct supervisor, her title is not sufficient to impose individual liability

under the NYSHRL. . . .  [The defendant] did not have the authority to hire or fire employees.  Instead, she simply could make hiring and firing recommendations.").  However, plaintiff has sufficiently alleged Ms. West's and Mr. River's participation in the conduct that gives rise to plaintiff's discrimination and retaliation claims.  See Williams v. PMA Companies, Inc., (citation omitted) 564 F. Supp. 3d 32, 57 (N.D.N.Y. 2021) ("[A] coworker who 'lacks the authority to either hire or fire the plaintiff may still be held liable as an aider-abettor under NYSHRL § 296(6) if he actually participates in the conduct giving rise to a discrimination claim.'").  As such, the undersigned recommends permitting the NYSHRL claims to proceed against individual defendants Rivers and West.  The undersigned makes no determination as to the merits of the claims.

### III.  Leave to Amend

"A *pro se* complaint should not be dismissed 'without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  Bennett v. Mnuchin, No. 6:20-CV-243 (BKS/TWD), 2020 WL 1674068, at *1 (N.D.N.Y. Apr. 6, 2020) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)), report and recommendation adopted, 2020 WL 3046046 (N.D.N.Y. June 8, 2020), reconsideration denied, 2020 WL 4432662 (N.D.N.Y. July 31, 2020).  "[G]ranting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend h[er] pleading.  Moreover, an opportunity to amend should be denied where 'the problem . . . is substantive such that [b]etter pleading will not cure it.'"  Abascal v. Hilton, No. 9:04-CV-1401(LEK/GHL), 2008

WL 268366, at *8 (N.D.N.Y. Jan. 30, 2008) (footnotes and quotation marks omitted),

aff'd sub nom. Abascal v. Jarkos, 357 F. App'x 388 (2d Cir. 2009) (summary order).

Plaintiff was afforded an opportunity to amend her original complaint. See Dkt. No. 9 at 12. Plaintiff names new defendants in her amended complaint and raises new state law claims. See Am. Compl. at 1-2. Affording plaintiff the "special solicitude" that is given to pro se plaintiff's, the undersigned recommends providing plaintiff an opportunity to amend her amended complaint as it relates to her FMLA and NYSHRL claims against individual defendants Adams, McKenna, and Petrin. However, as to her NYCHRL claims, plaintiff did not include in her original or amended complaints any allegations that relate, or even suggest a relation, to New York City. See generally Compl.; Am. Compl. As such, the undersigned recommends denying leave to amend any purported NYCHRL claims. Additionally, as to her Title VII and GINA claims against the School District, plaintiff was afforded an opportunity to amend her complaint and she has failed to plead facts that plausibly allege a violation of either statute. Thus, it is recommended that she not be afforded an additional opportunity to amend.

Should the District Judge adopt this Report-Recommendation and Order, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate by reference any portion of earlier complaints and may not attempt to replead claims that have already been dismissed by this Court with prejudice. Any claims that are not replead that were dismissed by this Court will be deemed abandoned.

## IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED,** that the plaintiff's ADA claims against the individual defendants and Title VII, GINA, and NYCHRL claims against the School District and individual defendants be **DISMISSED with prejudice and without leave to amend**; and it is further

**RECOMMENDED**, that plaintiff's claims against individual defendants Kaweeda Adams, Lori McKenna, and Matthew Petrin be **DISMISSED without prejudice and with leave to amend**; and it is further

**RECOMMENDED**, that all other claims be **PERMITTED TO PROCEED**;[4] and it is further

**ORDERED**, that the Clerk of Court not issue service of the amended complaint; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in dismissal of the claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the amended complaint for any claims that were permitted to proceed in the amended complaint; and it is further

---

[4] Pursuant to the undersigned's May 12, 2022, Report-Recommendation and Order and Judge Kahn's June 29, 2022, Memorandum-Decision and Order, plaintiff's ADA retaliation claim and FMLA claim against the School District were ordered to proceed.  See Dkt. Nos. 5, 9.

**ORDERED**, that the Clerk of Court reinstate Albany City School District as a defendant on the docket; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[5]

Dated:  October 13, 2022
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[5] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).