UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SAMANTHA C. MILNER-KOONCE,

                            Plaintiff,

-against-                                                    1:21-CV-1271 (LEK/CFH)

ALBANY CITY SCHOOL DISTRICT, *et al.,*

                            Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

 On November 29, 2021, Plaintiff Samantha Milner-Koonce commenced this action

against Defendants Albany City School District, Kaweeda Adams, Lori McKenna, Matthew

Petrin, Andrea West, Honeywell, and William Rivers. Dkt No. 1 ("Complaint"); Dkt. No. 10

("Amended Complaint"). In her Complaint, Plaintiff alleged that Defendants violated Title VII

of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Equal Pay Act

("EPA") and the Genetic Information Nondiscrimination Act ("GINA"). Compl. at 3–4.[1]

Plaintiff filed an application to proceed IFP, which Judge Hummell granted on May 12, 2022.

Dkt. No. 5.

 Magistrate Judge Hummell reviewed Plaintiff's Complaint under 28 U.S.C. § 1915 for

sufficiency of the claims and issued a report and recommendation that Plaintiff's claims for

discrimination under the ADA, the EPA, GINA, Title VII, and retaliation under the ADA, and

FMLA, as well as Plaintiff's state law claims for inflection of emotional distress be dismissed

---

[1] Citations to Plaintiff's Compliant refer to the pagination generated by CM/ECF, the Court's
electronic filing system.

without prejudice, and that Plaintiff's claims against the Honeywell law firm be dismissed with prejudice. Dkt. No. 5 ("Report and Recommendation"). Plaintiff filed objections to the Report and Recommendation's recommended dismissal of her ADA claims, including modifications to her original factual allegations. Dkt. No. 7 ("Objections"). The Court adopted the Report and Recommendation, with Plaintiff's modification. Dkt. No 9.

On July 26, 2022, Plaintiff filed an amended complaint against Albany School District, Kaweeda Adams, Lori McKenna, Matthew Petrin, William Rivers and Andrea West (collectively, "Defendants"). Dkt. No. 10. ("Amended Complaint").

On October 13, 2022, Magistrate Judge Hummel issued a Second Report and Recommendation that recommended the dismissal of Plaintiff's ADA claims against the individual defendants and the Title VII, GINA, and NYCHRL claims against the School District and individual defendants be dismissed without prejudice. Dkt. No. 11 ("Second Report and Recommendation" or "Second R&R"). The Second R&R also recommended dismissal of Plaintiff's claims against Defendants Kaweeda Adams, Lori McKenna, and Matthew Petrin. *Id.* at 29–34.

On June 1, 2023, this Court issued a Memorandum-Decision and Order which adopted the Second R&R in part, and rejected it in part. Dkt. No. 15. The Court ordered that Plaintiff's ADA claims against the individual defendants, and Title VII, GINA, and NYCHRL claims against the school district and the individual defendants be dismissed with prejudice, that Plaintiff's FMLA claims against Lori McKenna be dismissed without prejudice. *Id.* Plaintiff's FMLA claims, ADA and NYSHRL discrimination claims, ADA and NYSHRL retaliation claims, survived. *See id.*

On September 10, 2024, the Defendants filed a motion for summary judgment. Dkt. No. 63 ("Defendants' Motion"). Plaintiff filed a statement of material facts on October 5, 2024, Dkt. No. 73 ("Statement of Material Facts"), and Defendants replied on October 17, 2024, Dkt. No. 82 ("Reply")[2].

Plaintiff also filed a motion for a permanent injunction, Dkt. No. 66 ("Motion for Permanent Injunction").

In the interest of judicial efficiency, the Court will consider both parties' motions. For the reasons that follow, Defendants' Motion is granted, and Plaintiff's Motion for a Permanent Injunction is denied.

## II.    BACKGROUND

The following facts are undisputed, except where otherwise noted.

### 1.    *Plaintiff's Employment History*

Plaintiff started working for Defendant Albany County School District ("ACSD" or "District") as a 10-month Typist, in September of 2015. Dkt. No. 80-2 ¶ 1 ("Defendant's Reconciled Statement of Material Facts" or "Defs.' SMF"). From September 2015 to June 2021, Plaintiff worked for ACSD as a Typist assigned to the Stephen and Harriet Myers Middle School ("HMMS"). *Id.* at ¶ 2. "In the Fall of 2021, the staff students and HMMS operations were temporarily relocated to Albany High School due to physical problems with the HMMS building". Defs.' SMF ¶ 44. In September 2021, Plaintiff was "assigned part-time to the New

---

[2] Plaintiff did not file a memorandum of law responding to the arguments that Defendants raised in their Motion for Summary Judgement as required by Local Rule. 7.1(a)(3). *See* L.R. 7.1(a)(3); Dkt. No. 73.

Scotland Elementary School and part-time to the Delaware Community School" splitting her time between the two schools. *Id.* at ¶ 3.

### 2. 2020 FMLA Leave

Prior to 2020 Plaintiff had requested and been approved for leave under the Family and Medical Leave Act (FMLA), when eligible, on a number of occasions stretching back to 2018. *See, e.g.*, *id.* ¶¶ 23–30. Plaintiff requested FMLA leave on October 23, 2020. *Id.* at ¶ 32. It is disputed whether or not Plaintiff was granted FMLA leave effective October 23, 2020, or October 26, 2020. *Id.* ¶¶ 32, 46; Dkt. No. 73 ¶ 16 ("Plaintiff's Statement of Material Facts" or "Pla's SMF"). It is undisputed that Plaintiff was approved for leave from October 26 to December 23, 2020. Defs.' SMF ¶ 46. On October 23, 2020, Plaintiff was not at work and was not paid for that day. Defs.' SMF ¶ 45; Pla's. SMF ¶¶ 23-25(a); Dkt. No. 73-8 at 4 ("Attendance Activity Report").

While Plaintiff was out on approved leave during that Fall, she left some of her personal items at her workstation at Albany High School, and did not retrieve her property until December 2020. Defs.' SMF ¶ 49.

### 3. Disciplinary Issues

In October 2020, Plaintiff requested additional compensation when she was "asked to perform work in the Guidance area at the HMMS," which was denied. *Id*. ¶ 48.

On February 22, 2021, Plaintiff received an e-mail message from Ms. Koldis, a "School Counselor." The email stated "Khym didn't show you all of this? There is a Google Form that she created. I will have to go into my email to look for it, but I am surprised she didn't show you all of this." *Id*. ¶ 55. The receipt of this e-mail caused Plaintiff to become upset and to leave work early. *Id*. at ¶ 54. Plaintiff did not notice to her supervisor prior to leaving early, instead she

asked the Office Manager to inform Mr. Rivers. *See id.*; Pla's. SMF ¶ 31. After receiving the e-mail from Ms. Koldis, Plaintiff discussed the e-mail with Mrs. Reeves, the Office Manager. Defs.' SMF ¶ 56. When discussing the e-mail with a co-worker that day, Plaintiff referred to Ms. Koldis as a "bitch" and "said some things out of anger." *Id.* at 57. It is disputed whether or not Plaintiff made a statement threatening to punch Ms. Koldis in the face. *Compare id.* ¶¶ 60, 63, 73 *with* Pla's. SMF ¶ 32.

On March 29, 2021, Defendant Rivers sent Plaintiff a counseling memorandum outlining concerns that the Defendants had with Plaintiff's attendance, ability to complete job responsibilities, and interaction with co-workers. Dkt. No. 63-10 at 1–2 ("Counseling Memorandum"). The Counseling Memorandum stated that she had told another staff member that she was going to "punch..[them] in the face." *Id.* at 3.[3]

Plaintiff sent an e-mail to Mr. Rivers in response to his Counseling Memorandum on April 12, 2021. Defs.' SMF ¶ 71. On April 30, 2021, Plaintiff filed a formal complaint with the EEOC alleging that she was "harassed and subjected to different terms and conditions of employment due to [her] disability," and that Defendants had refused to "grant[] any reasonable accommodation for [her] disability related absences." Dkt. No. 63-16 at 2 ("EEOC Charge"). The EEOC dismissed Plaintiff's EEOC Charge on August 31, 2021, and issued Plaintiff a right to sue letter. Defs.' SMF ¶ 89; EEOC Charge at 4–5.

In September 2021, Plaintiff was involuntarily transferred from HMMS. Defs.' SMF ¶ 4; Pla's SMF ¶ 3,

---

[3] Citations to the Counseling Memorandum, and EEOC Charge refer to the pagination generated by CM/ECF, the Court's electronic filing system.

### III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instruct courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine'… if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgement, granting summary judgment is improper if there are genuinely disputed material facts.) *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of facts could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgement bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In attempting to defeat a motion for summary judgement after the moving party has met its initial burden, the nonmoving party "must do more than simple show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The nonmoving party may not rely on mere conclusory allegations, speculation, or conjecture, *see Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996), and must present more than a mere "scintilla of evidence" supporting its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and "draw all reasonable inferences in favor of the nonmoving party,"

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), and "eschew[s] credibility assessments[,]" *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a Court's duty in reviewing a motion for summary judgement is "carefully limited" to finding genuine disputes of fact, "not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    LOCAL RULE 7.1

In this Circuit, it is well established that courts owe a special solicitude to pro se litigants and should construe their submissions "liberally… to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases). However, "[t]his special solicitude is not unlimited … and does not relieve a plaintiff of [their] duty to meet the requirements to defeat a motion for summary judgement." *Rotondo v. Best Buy Stores LLC*, 17-CV-522, 2019 WL 4805374, at *7 (N.D.N.Y Oct. 1, 2019) (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)) (internal quotes omitted). Neither is a party's pro se status an excuse for non-compliance with the local rules. *See Hester v. Salle*, 23-CV-1171, 2025 WL 1580824 at *4 (N.D.N.Y June 4, 2025) (noting that "even pro se litigants must adhere to a district court's procedural rules"); *Triestman*, 470 F.3d at 477 ("pro se status does not exempt a party from compliance with the relevant rules of procedural and substantive law") (citation omitted).

Under Local Rule. 7.1(a)(3), where a non-movant has "willfully failed to respond to movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum of law." *Cao-Bossa v. New York State Department of Labor*, No. 18-CV-509, 2021 WL 367475, at *11 (N.D.N.Y. Aug.

19, 2021); N.D.N.Y. L.R. 7.1(a)(3). The moving party can prevail in such instances by merely demonstrating "entitlement to the relief requested." *See Cossey v. David*, No. 4-CV-1501, 2007 WL 3171819, at *4 (N.D.N.Y. Oct. 29, 2007). The Defendant's burden in proving entitlement has been characterized by this Court as "modest", requiring only that the Defendant's arguments be "facially meritorious." *See id.*

Here, Plaintiff failed to file a memorandum of law supporting her opposition to Defendants' motion for summary judgement.[4] Accordingly, the Court deems Plaintiff to have consented to Defendants' legal arguments and will analyze Defendants' arguments under the more deferential facially meritorious standard of review.

## V.    DISCUSSION

Defendants bring five arguments supporting their Motion for Summary Judgment: (1) Plaintiff failed to exhaust the available remedies prior to bringing suit. Defs.' Mot. at 11–16; (2) Defendants didn't discriminate against Plaintiff because of her disability; *Id.* at 22–24; (3) Defendants didn't fail to reasonably accommodate Plaintiff's disability; *Id.* 24–26; and (4) Defendants didn't create a hostile workplace environment in violation; *Id.* at 26–27  (5) Defendant didn't retaliate against Plaintiff for bringing an EEOC charge; *Id.* at 11–16; (6)

---

[4] The Court acknowledges receipt of Plaintiff's response to Defendants' Motion for Summary Judgment. Dkt. No. 73 ("Statement of Material Facts"). Plaintiff's filings however contained a statement of material fact without a corresponding memorandum of law, as required by Local Rule 7.1(a)(3). *See* L.R. 7.1(a)(3). While Plaintiff's SOMF contains legal arguments it is primarily devoted to refuting Defendants' factual assertions, and in fact does not reference or refute any of Defendants' legal arguments. *See generally* Pla's SOMF. These facts, along with the title of the filing and its substance does not evince an intent to counter Defendants' legal arguments, and the Court therefore declines to treat it as a response to those arguments.

Defendants didn't interfere with or retaliate against Plaintiff for seeking FMLA leave; *Id.* at 19–22.

The Court discusses these arguments in turn.

### A. ADA and NYSHRL Retaliation Claims

#### 1. *Administrative Exhaustion*

Defendants first argue that Plaintiff's ADA claims should be dismissed as unexhausted. Defs'. Mot. at 9. The Court disagrees for the reasons discussed below.

A plaintiff is required to properly exhaust the administrative remedies available under the ADA, including the filing of claims with the EEOC, prior to filing suit in federal court. 42 U.S.C. §§ 12117(a), 2000e-5 (b), (e)–(f). However, "[c]laims not raised in an EEOC complaint, [] may be brought in federal court if they are 'reasonably related' to the claim filed with the [EEOC]." *Williams v. City of New York Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). Among others, a claim that "alleg[es] retaliation by an employer against an employee for filing an EEOC charge" is reasonably related to the EEOC charge. *Butts*, 990 F.2d at 1402.

Here, Defendants' argument that certain of Plaintiff's ADA claims for retaliation should be dismissed as unexhausted fails. Plaintiff alleges that Defendant retaliated against her filing of the EEOC charge by involuntarily transferring her to a different worksite. Pla's SMF ¶¶ 39 (a)–(j). As retaliation for filing an EEOC charge is reasonably related to that charge, Plaintiff was permitted to bring these claims in Federal Court.

#### 2. *ADA Retaliation*

Defendants further argue that Plaintiff's ADA retaliation claims should be dismissed because Plaintiff fails to present a prima facie case. The Court agrees.

ADA retaliation claims are analyzed under the *McDonell-Douglas* burden shifting framework. *See McGuire-Welch v. House of the Good Shepherd*, 219 F. Supp. 3d 330, 345 (N.D.N.Y. 2016) (citing *Patane v. Clark*, 508 F.3d 106, 115–117 (2d Cir. 2008)); *see also McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). Under *McDonell-Douglas*, "a plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *See Eisner v. Cardozo*, 684 Fed. Appx. 29, 31 (2d Cir. 2017).

To establish "[a] prima facie case of retaliation under the ADA,"[5] Plaintiff must show: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) (citation omitted).

Defendants principally argue that (1) Plaintiff did not experience an adverse employment action; and (2) there was no causal connection between any adverse employment action and any protected activity. Defs' Mot. at 13–14. As the question of whether Plaintiff experienced an adverse employment action is a threshold question, the Court will start with prong three of the ADA employment discrimination analysis.

"An adverse action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Sharikov v. Phillips Medical Systems MR,*

---

[5] The New York Human Rights Law contains similar provisions against retaliation as the ADA and claims for retaliation under the NYHRL are therefore assessed under the same standards as the ADA. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citing *Weismann v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir. 2000) (analyzing retaliation claims under NYHRL using ADA standard); 29 U.S.C. § 794(d); N.Y. Exec. Law § 296(7).

*Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) (citing *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 90 (2d Cir. 2015)) (internal quotes omitted). "An employee transfer can constitute an adverse employment action if 'a reasonable employee would have found the challenged action materially adverse.'" *Pistello v. Bd. Of Educ. Of Canastota Cent. Sch. Dist.*, No 16-CV-212, 2017 WL 1194025, at *7 (quoting *Williams v. City of N.Y.*, No. 99-CV-2697, 2006 WL 2668211, at *21 (E.D.N.Y. Sept. 11, 2006)) (additional citation omitted). In determining material adversity, courts look at a wide variety of factors including "whether the reassignment or transfer led to a diminution in responsibilities, prestige, or opportunity for advancement" *Ragin v. East Ramapo Cent. School Dist*, No. 5-CV-6496, 2010 WL 1326779, at *22 (S.D.N.Y. March 31, 2010). Courts in this Circuit have held that a lateral transfer that occurs without a diminution of pay or prestige does not constitute a materially adverse employment action. *See Pacheo v. New York Presbyterian Hosp*., 593 F. Supp. 2d 599, 618; *Alers v. New York City Human Res. Admin*., No. 6-CV-6131, 2008 WL 4415246, at *7 (E.D.N.Y. Sep. 24, 2008); *Ragin,* 2010 WL 1326779 at *23.

Here, Defendants' argument that Plaintiff has failed as a matter of law to establish a prima facie case of ADA or NYSHRL retaliation is facially meritorious. The Court finds that Plaintiff did not experience an adverse employment action. As Defendant recognized in their Motion, Plaintiff's transfer resulted in a "rate of pay increase[] in the 2021-2022 school year", the same "job title and status", the same job term (i.e. 10-months) and her "supervisory relationships improved". Mot. at 13. Plaintiff's involuntary transfer in September of 2021 therefore occurred without a diminution of pay or prestige and is not the kind of action that would dissuade a reasonable employee from making a charge of discrimination. Defs.' SMF ¶ 6

11

("Each year Plaintiff was employed by the District she was paid more than the preceding year."); Dkt. No. 63-15 ("Transfer Letter").

As the existence of an adverse employment action is a necessary pre-condition for establishing a prima-facie ADA employment discrimination case, *Muller*, 187 F.3d at 311, the Court need not reach the question of causality.

Accordingly, Defendants' motion for summary judgment regarding Plaintiff's ADA and NYSHRL retaliation claims is granted.

### B. ADA and NYSHRL Discrimination Claims

#### *1. Disparate Treatment Claim*

Defendants argue that Plaintiff's ADA and NYSHRL Discrimination claims should be dismissed because Plaintiff has not established a prima facie case. Defs'. Mot. at 22–27. The Court finds this argument facially meritorious. In relevant part, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to… employee compensation, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination claims are assessed under the *McDonell-Douglas* burden shifting framework.[6] *See McBridge v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). "[T]o establish a prima facie case [of discrimination] under the ADA a plaintiff must show by a preponderance of the evidence that: (1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodations; and (4) s[he]

---

[6] "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *See Rodal v. Anesthesia Grp. Of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004). Therefore, the Court will assess Plaintiff's claims under both the ADA and the NYSHRL below.

suffered adverse employment actions because of h[er] disability. *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006). Further, in order to satisfy the fourth prong, a plaintiff must also "prove that discrimination was the but-for cause of any adverse employment action". *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

Under the ADA, a plaintiff suffers an adverse employment action when they "endure[] a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotes omitted) (abrogated on other grounds). "[A] mere inconvenience or alteration of job responsibilities" is not a materially adverse change. *Id.* Rather, significant changes in the terms of employment, such as the termination of employment, demotion, a decrease in wages or prestige, or a loss of benefits constitute a materially adverse employment action. *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

A lateral transfer that "involves no significant changes in an employee's conditions of employment" is not a materially adverse change even if the employee views such a transfer negatively. *Flieger v. Eastern Suffolk BOCES*, 693 Fed. A'ppx 14, 17 (2d Cir. 2017) (quoting *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 206 (2d Cir. 2006).[7] "Increased

---

[7] The Court acknowledges the potential impact of *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), on the standard for when a transfer constitutes an adverse employment action. In *Muldrow*, the Supreme Court in a Title VII case held that a transferee did not need to show that the harm incurred was "significant . . . . [o]r serious or substantial or any similar adjective suggesting that the disadvantaged employee must exceed a heightened bar". *Muldrow*, 601 U.S. at 355. While the ADA borrows much from Title VII, *see Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir. 2010), and the logic of *Muldrow* arguably applies to the ADA context, the Second Circuit has not held so at the time of this writing. Accordingly, the Court will continue to apply

responsibilities and excessive scrutiny, without more, [also] do not constitute an adverse employment action." *Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 135 (E.D.N.Y. 2012). Courts in this Circuit have required a plaintiff to prove that they suffered additional negative results such as a decrease in pay or being placed on probation for increased responsibilities to constitute a materially adverse change. *See Dauer v. Verizon Commc'ns Inc.*, 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009); *Hall v. N.Y. City DOT*, 701 F. Supp.2d 318, 336 (E.D.N.Y. 2010).

Here, Defendants' argument that Plaintiff has failed to establish a prima facie case of disability discrimination is facially meritorious. Defendants' main argument is that Plaintiff fails to prove the fourth element of her prima facie case because she "cannot offer any evidence that Defendants subject[ed] her to any adverse employment action on the basis of an actual or perceived disability." Defs'. Mot. at 23[8].

Plaintiff, in turn, alleges multiple actions that Defendants took towards her allegedly because of her disability. Plaintiff alleges that Defendants: denied her intermittent leave, refused to pay her for increases in job responsibilities, relocated her desk, moved her belongings, refused to offer her a 10-month position, threatened her job in a counseling meeting and involuntarily transferred her to a different job site, and docked her pay on a single day. Pla's SMF at ¶¶ 4, 19(b), 25(b), 37(a).

---

the binding precedent established by the Second Circuit until such time that it is overruled. *See Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 481 (E.D.N.Y. 2022) ("District courts are 'bound by the decisions…of those Circuit Court of Appeals in their own circuit.") (quoting *Cont'l Sec. Co. v. Interborough Rapid Transit Co.,* 165 F. 945, 959-60 (2d Cir. 2004))

[8] The Court acknowledges that Defendants dispute Plaintiffs disability status under the ADA and stipulated that she may be disabled under the NYSHRL. Defs' Mot. at 23. The Court will assume without deciding for the sake of this analysis that Plaintiff is disabled under both the ADA and the NYSHRL.

However, barring the docking of pay, these actions do not constitute adverse employment actions under the ADA. As discussed *supra*, Defendants' involuntary transfer of Plaintiff did not constitute a materially adverse change because it occurred without a diminution of pay or prestige. *See supra* at 11. Additionally, the fact that Defendants gave Plaintiff additional job responsibilities without additional compensation is also not a materially adverse change, because Plaintiff has not provided any evidence of any additional negative acts connected with such behavior. *Workneh*, 897 F. Supp. 2d at 135. Finally, the refusal to offer a 10-month position, the relocation of her desk and belongings do not constitute substantial changes in the conditions of her employment but were instead mere alterations to her working conditions. Plaintiff has not provided any admissible evidence that any of those actions substantially altered her working conditions or rose above the level of a 'mere inconvenience". *See Vale*, 80 F. Supp. 3d at 434. (citing *Norris v. New York City Hous. Auth.*, No. 02-6933 2004 WL 1087600, at *17 (S.D.N.Y. May. 14, 2004)). The Court does find, however, that Defendant's docking Plaintiff's pay in October 2021, did constitute a materially adverse change, and will therefore assess causality.

While the Court does find that Defendants docking Plaintiff's pay in October 2021, did constitute a materially adverse change, Plaintiff has failed to prove that her disability was the but-for cause of Defendant's docking her pay. Specifically, Plaintiff has not provided any evidence beyond conclusory allegations that her disability was the but-for cause of the docking of her pay. Plaintiff states that "Defendants decision [to dock her pay], made on the advice of Mr. Rivers… raises an issue of fact as to whether this action was discriminatory." Pla's. SMF ¶ 25(c). She also states that Defendant's "intentionally failed to honor [her FMLA leave date]," and acted in concert to "initiate[] the decision to dock [P]laintiff's pay". *Id.* at ¶¶ 25(d), 37(a).

Accordingly, the Court grants summary judgment for Defendant, and dismisses Plaintiff's ADA disparate treatment claim. *See Fischer*, 968 F. 3d at 221 (noting "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.") (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)).

### 2. Failure to Accommodate Claim

Defendants also argue that Plaintiff's ADA and NYSHRL failure to accommodate claims should be dismissed. Defs'. Mot. at 24. The Court agrees.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability" – which includes a refusal to make "reasonable accommodations to known physical or mental impairments of an otherwise qualified individual." 42 U.S.C. §§ 12112(b)(5)(A). To make out a failure-to-accommodate claim under the ADA and the NYSHRL[9] a plaintiff must demonstrate that "1) she was an individual who had a disability within the meaning of the statute; 2) the employer had notice of her disability; 3) she could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Wildman v. Verizon Corp.*, No. 05-CV-988, 2009 WL 104196 at *1 (N.D.N.Y. Jan 14, 2009) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 331 & n.1 (2d Cir. 2000)) (cleaned up).

For the sake of assessing Defendants' argument, the Court will assume, without deciding, that Plaintiff has satisfied the first two elements of an ADA and NYSHRL failure to accommodate claim.

---

[9] Failure to accommodate claims brought under the NYSHRL are analyzed under the same framework as the ADA. *See Berger v. New York City Police Department*, 304 F. Supp. 360, 368 (S.D.N.Y. 2018). Accordingly, the Court will assess Plaintiff's claims under both statutes below.

A reasonable accommodation is one that "enable[s] an individual with a disability who is qualified to perform the essential functions of that position… to enjoy equal benefits and privileges of employment." 29 C.F.R. § 1630.2(o)(1)(ii), (iii). However, "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll v. International Business Machines Corp.*, 787 F. 3d 89, 95 (2d Cir. 2015) (citing 29 C.F.R. § 1630 app.); *Fink v. N.Y.C. Dept' of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995) (noting that an employer is not required to "provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable.")

Here, Defendants' arguments that Plaintiff has failed to meet her burden in proving that they refused to make reasonable accommodations are facially meritorious. First, Defendant has made a facially meritorious argument that, to the extent that such leave requests can be characterized as a request for accommodation, that they did not deny any requests. *See* Defs'. Mot. at 25. Plaintiff has not provided any evidence beyond conclusory allegations that Defendants ever denied her requests for leave, when she was eligible for such leave.

Further, Defendants have made a facially meritorious argument that they did not deny Plaintiff a reasonable accommodation when they refused her request for a customized work schedule. Defendant's principal argument here is that they didn't deny Plaintiff a "reasonable accommodation" because her request would have violated both the district's collective bargaining agreement and state law. Defs'. Mot. at 26; Dkt. No. 63-7 at ¶ 24 ("Rivers Declaration").

Assuming that Plaintiff satisfies all of the other elements of a failure to accommodate claim, the Defendant was only required to provide Plaintiff with a "reasonable" accommodation, not the exact accommodation that Plaintiff requested. In this instance, Defendants provided

Plaintiff with a reasonable alternative accommodation: unpaid leave during her scheduled tour of duty. *See* Dkt. No. 73-10 ("Pla's Ex. J") at 2 (discussing exhaustion of leave); Def's Ex. A at 124–26 (discussing alternative accommodation). Plaintiff in her filings has not provided evidence that suggests that this alternative would fail to accommodate her disability or provided anything beyond conclusory allegations of malfeasance on the part of the Defendants.

Accordingly, the Court grants Defendant's motion for summary judgement on Plaintiff's failure to accommodate claims.

### 3.  ADA and NYSHRL Hostile Work Environment Claims

In their Motion, Defendants also argue that Plaintiffs' claims for a hostile work environment should be dismissed because: (1) they can establish an affirmative defense; and (2) in the alternative, that Plaintiff failed to produce evidence that she experienced trait-based harassment. Defs'. Mot. at 26–27. The Court agrees.

As a threshold matter, to successfully bring a hostile work environment claim under the ADA, a plaintiff must "allege facts suggesting that the harassing conduct was motivated by animus directed at [her] disability." *Zako v. Encompass Digital Media, Inc.*, No. 19-cv-844, 2020 WL 3542323, at *13 (D. Conn. June 30, 2020). A plaintiff must also demonstrate that "(1) the harassment was sufficiently severe and pervasive to alter the conditions of [her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer". *Id.* To do so she must show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).

To bring a hostile work environment claim under the New York State Human Rights Law, a plaintiff must "show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Bilitch v. New York City Health & Hosps. Corp.*, 194 A.D. 3d 999, 1003, 148 N.Y.S.3d 238, 245 (2021) (citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d at 310, 786 N.Y.S.2d 382, 819 N.E.2d 998)). "To determine whether a hostile work environment exists, a court must consider all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonable interfered with the plaintiff's work performance. *Id.* (citing *La Marca-Pagano v. Dr. Steven Phillips, P.C.*, 129 A.D.3d 918, 919-920, 12 N.U.S. 3d 192)) However, it is also important to note that "[e]ven a single incident of [] harassment can create a hostile work environment if the alleged conduct is sufficiently severe". *Beharry v. Guzman*, 33 A.D.3d 742, 743 N.Y.S.2d 195.

Defendants first argue that "[t]o the extent Plaintiff attempts to assert claims for harassment of hostile work environment ("HWE")" they can establish an affirmative defense under *Faragher/Ellerth.* Def's Mot. at 26. The framework holds that

> [w]hen no tangible employment action is taken [by an employer], a defending employer may raise an affirmative defense . . . (a) that the employer exercised reasonable care to prevent and correct promptly any [] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). A tangible employment action for the purposes of the *Faragher/Ellerth* defense, includes acts such as: discharge, demotion, or undesirable reassignment. *See Faragher*, 524 U.S. at 775 (citing *Burlington*, 524 U.S. at 762-763).

Defendants contend that because Defendants' took reasonable care to prevent a hostile workplace, and Plaintiff failed to utilize the District's corrective process, that they are entitled to summary judgment. Defs' Mot. at 26. Here too, the Court agrees.

Nowhere in Plaintiff's filings does she allege that she experienced any "tangible employment actions" as a result of a hostile-work place. *See generally* Pla's. SMF. For instance, she doesn't allege that she suffered from a demotion, was fired, or experienced an undesirable reassignment as a result of harassment on the basis of her disability. *Id.* Additionally, Defendants in their Motion argued that "Plaintiff [] failed to avail herself of the District's anti-harassment policies." Mot. at 26. Plaintiff in turn doesn't provide any admissible evidence to rebut that assertion, or provide any explanation why she didn't use the District's preventative process. *See generally* Pla's. SMF.

The Court therefore finds that Defendants have met the elements and have successfully made out an affirmative defense. Accordingly, the Court grants Defendant's summary judgment on Plaintiff's ADA hostile work environment claims. As the *Faragher/Ellerth*, affirmative defense is not available under the NYSHRL, the Court will continue to analyze Defendants' arguments that their conduct can't support a hostile work environment claim under the NYSHRL. *See* N.Y. Exec. Law § 296 (h).

Defendants argue that none of their conduct taken towards Plaintiff can establish a hostile work environment claim under the NYSHRL. Mot. at 26-27. They argue that none of their conduct can be considered to be 'harassing', and even if it was, that it was not driven by animus at Plaintiff's disability. *Id.* Plaintiff in turn fails to rebut Defendants' argument. In her SOMF she doesn't provide any admissible evidence suggesting that she experienced harassment nor that it was driven by animus aimed at her disability. *See* generally Pla's SMF. She merely argues that

she suffered from "harassment" resulting from the Counseling Memo and that Principal Rivers

engaged in a "pattern of harassment", by "copy[ing] other staff on his communications with

Plaintiff." Pla's. SMF at ¶¶ 39(c); 39(l). Indeed, the conduct alleged does not even rise to the

level of "a mere offensive utterance". *See Bilitch*, 194 A.D. 3d at 1003.

Although Defendant's actions may have made Plaintiff uncomfortable, they are far from

the type of acts aimed at a Plaintiff's disability that are required to state a hostile work

environment claim under the NYSHRL. Accordingly, the Court likewise grants summary

judgement for defendants on Plaintiff's NYSHRL hostile work environment claim.

### 4. *NYSHRL Individual Capacity Claims*

Finally, Defendants argue that Plaintiff's individual capacity claims under the NYSHRL

should be dismissed because none of the named individual defendants engaged in any "denial of

a disability-based workplace accommodation, [or] disability based offensive behavior that could

support a HWE claim." Defs'. Mot. at 28. As discussed, *supra*, the Court agrees that Plaintiff has

failed to prove failure to accommodate, and hostile work environment claims under the ADA and

the NYSHRL.

Under the NYSHRL, an individual can be liable for "aiding and abetting a *liable*

employer." *Nezaj v. PS450 Bar and Restaurant*, 719 F. Supp. 3d 318, 329–30 (S.D.N.Y. 2024)

(emphasis added). However, a "predicate for the imposition of liability on others for aiding and

abetting" is the "liability of [Plaintiff's] employer". *Pellegrini v. Sovereign Hotels*, Inc., 740

F.Supp. 2d 344, 356 (N.D.N.Y. 2010).

Here, as discussed, *supra*, the Albany County School District was not liable for violating

the NYSHRL in creating a hostile work environment or failing to provide a reasonable

accommodation. Therefore, the named individual defendants cannot, as a matter of law, be liable under an aiding and abetting theory.

Accordingly, the Court grants Defendants' Motion for Summary judgment on the claims against the individual named defendants.

### C. Family and Medical Leave Act Claims

#### 5. *Genuine Dispute of Material Fact*

Defendants in their Statement of Material Facts, and Exhibits suggest that Plaintiff applied for FMLA leave on October 23, 2021, and was approved for leave starting October 26, 2021. Defs.' SMF ¶ 46;  Dkt. No. 63-9 ("Defs.' Ex. A") at 105. Plaintiff in her Statement of Material facts stated that she was approved for FMLA leave on October 23, 2020. Pla's SMF ¶ 16.

"An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawasky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of "demonstrate[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, the non-moving party bears the burden of providing some "affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 437, 445 (2d Cir. 1980).  A non-movant however cannot "create a genuine issue of fact sufficient to survive summary judgement simply by contradicting his or her own previous sworn statement without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 807 (1999).

Here, Defendant supports their argument that no genuine issue of material fact exists concerning the effective date of the granting of Plaintiff's FMLA leave with Plaintiff's deposition testimony. *Compare* Defs.' SMF ¶ 32 *with* Dkt. No. 63-9 ("Defs.' Ex. A") at 105. Plaintiff in her sworn testimony clearly stated that she applied for FMLA leave starting October 26, 2020. In her Statement of Material Facts, Plaintiff contradicted this sworn testimony without providing any additional evidence or explanation of the disparity. Pla's SMF ¶ 16. Accordingly, the Court will follow the Supreme Court's instruction in *Cleveland*, and find that there exists no genuine dispute of material fact concerning the effective date of Plaintiff's FMLA Leave.

### 6. *FMLA Interference*

Defendants argue that Plaintiff's FMLA interference claim should be dismissed because they never denied her leave which she was entitled to take under the FMLA. Defs.' Mot. at 20. The Court agrees for the reasons discussed below.

To establish a prima facie case of FMLA interference a plaintiff needs to demonstrate that: (1) "s[he] is an eligible employee under the FMLA"; (2) "[the] defendant is an employer as defined in the FMLA"; (3) "[plaintiff] was entitled to take leave under the FMLA"; (4) "[plaintiff] gave notice to the defendant of [her] intention to take leave"; (5) [plaintiff] was denied benefits to which [she] was entitled under the FMLA." *Achille v. Chestnut Ridge Transp.*, 584 Fed. App'x. 20, 21 (2d Cir. 2014) (quoting *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011)) (internal quotes omitted).

Defendants argue that Plaintiff has failed to make out a prima facie case for FMLA interference because she has not demonstrated that she was ever denied a benefit to which she was entitled to under the FMLA. Defs.' Mot. at 20.

Here, Defendants' argument that Plaintiff has failed to make out a prima facie case for FMLA interference is facially meritorious. Plaintiff requested leave under the FMLA numerous times, and Defendants granted each request for leave that she was entitled to take. Defs'. SMF ¶¶ 23–34. Regarding the October 2020 leave request, the record shows that Defendant granted that request on October 26, as requested by Plaintiff. Defs.' SMF ¶ 32; Defs.' Ex. A 105. The Court therefore finds that Plaintiff was not denied any FMLA leave that she was entitled to take, and accordingly grants Defendant's motion for summary judgment regarding Plaintiff's FMLA interference claims.

### 7. *FMLA Retaliation Claim*

Defendants argue that Plaintiff's FMLA retaliation claims should be dismissed because Defendant's didn't retaliate against Plaintiff for taking FMLA leave. Defs'. Mot. at 20. FMLA Retaliation claims are analyzed pursuant to the *McDonell-Douglas* burden shifting framework. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). To establish a prima facie case for FMLA retaliation, a plaintiff must demonstrate that: (1) she "exercised [the] rights protected under the FMLA; (2) [s]he was qualified for her position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* at 168.

An adverse employment action for the purposes of an FMLA retaliation is an action that would have "dissuad[ed] a reasonable worker from [taking FMLA leave]." *See Smith v. North Shore-Long Island Jewish Health System*, 286 F. Supp. 3d 501, 512 (E.D.N.Y. 2018) (citing *Millea v. Metro – N. R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011)). A plaintiff can demonstrate that the circumstances of the adverse action give rise to an inference of retaliatory intent if a "causal connection" exists between their taking of FMLA leave and the "adverse action taken by the

employer." *See Donelly v. Greenburgh Cent. School Dist. No. 7*, 691 F.3d 134, 152 (2d Cir.

2012). A causal connection can be demonstrated, *inter alia*, "directly, through evidence of

retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at, 319 ,

or "by showing that the protected activity was closely followed in time by the adverse action,"

*Albertin v. Nathan Littauer Hospital and Nursing Home*, 537 F. Supp. 3d 243, 269 (N.D.N.Y.

2021). The standard of proof for the "causal connection" is whether "[her] exercise of rights

under the FMLA was a motivating factor in the [employer's] adverse employment action"

*Stanley v. Phelon*, 2024 WL 1453872 at *1 (April 4, 2024 2d Cir) (citing *Natofsky,* 921 F.3d 33,

354 (2d. Cir. 2019)).

### a.  Prima Facie Case

First, Plaintiff has established a prima facie case of FMLA retaliation. It is not disputed

that on October 23, 2020, Plaintiff exercised rights protected under the FMLA, and that she was

otherwise qualified for her position. On October 26, 2020, Defendant Rivers "facilitated a correct

entry into AESOP" which resulted in Plaintiff's pay being docked for October 23, 2020. Defs.'

SMF ¶ 47. This was an adverse employment action as a loss of wages, is an action that would

have dissuaded a reasonable worker from taking FMLA Leave. Further, Defendant's docking

Plaintiffs wages 72-hours after she requested FMLA leave was sufficiently close in time to

demonstrate a causal connection.

### b.  Defendant: Providing a Legitimate Non-Discriminatory Purpose

Defendants, however, are able to present proof of a legitimate non-discriminatory

purpose behind their docking of Plaintiff's pay on October 26, 2020. Defendants in their Motion

suggest that Defendant Rivers decided to "facilitate" an entry into AESOP to ensure that

Plaintiff's attendance was "accurately reflected and [to] prevent[] Plaintiff from being accused of

stealing time from the District thereby protecting her from potential discipline." Defs.' Mot. at

14. The Court finds Defendant's articulated purpose for the docking of pay to be a legitimate

non-discriminatory purpose – to ensure the accuracy of attendance records.

> c.  Plaintiff: Demonstrating that Defendant's Purpose was Pretextual

Finally, Plaintiff is unable to demonstrate that Defendant's asserted non-discriminatory

reason for updating AESOP and docking her pay was pretextual. In her Statement of Material

Facts, Plaintiff provides nothing more than conclusory allegations that Defendant docked her pay

out of retaliation for requesting FMLA Leave. *See e.g.*, Pla's SMF at ¶ 25(b) ("the docking of

pay… suggests potential [FMLA] retaliation"). For Plaintiff to prevail at this stage she would

need to provide admissible evidence beyond mere allegations – which she has not done.

Accordingly, the Court grants Defendant's Summary Judgement Motion regarding

Plaintiff's claims for FMLA retaliation.

**D.  Motion for a Permanent Injunction**

Plaintiff also filed a motion requesting that the Court issue a permanent injunction related

to her school district e-mail address and the school district Defendant's IT systems. Dkt. No. 66

("Motion for Permanent Injunction").

"The Plaintiff as the party invoking federal jurisdiction bears the burden of establishing

[standing]." *Yankovitch v. Applus Technologies, Inc.*, 621 F. Supp. 3d 269, 273 (D. Conn 2022).

In fact, this is the case "[f]or each form of relief sought.'" *Hahn v. JetBlue Airways Corporation*,

738 F. Supp. 3d 229 at 247–48 (E.D.N.Y. 2024) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d

220, 239 (2d Cir. 2016). To establish standing, as required by Article III of the Constitution, a

plaintiff must show "(1) an injury in fact; (2) a causal connection between that injury and the

conduct at issue; (3) a likelihood that the injury will be redressed by a favorable decision."
*Maddox v. Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58, 62 (2d Cir. 2021).

"To satisfy Article III's injury in fact requirement, the harm cited by a plaintiff must be actual or imminent not speculative – meaning that the injury must have already occurred or be likely to occur soon." *Hahn*, 738 F. Supp. 3d at 248 (quoting *Food & Drug Admin. V. All. For Hippocratic Med.*, 602 U.S. 367, 381 (2024)). It must also be "concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Concrete injuries are those that "actually exist… [are] real, and not abstract." *Spokeo*, 578 U.S. at 340. Indeed, the Supreme Court has stated that a concrete harm for the purposes of Article III, is one that has a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American Courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (citing *Spokeo*, 578 U.S. at 341). These include both "tangible harms, such as physical harms and monetary harms" and intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id* at 425.

Finally, when a plaintiff seeks injunctive relief, the plaintiff must additionally "establish a sufficient likelihood of future injury." *Hahn*, 738 F. Supp. 3d at 248 (quoting *Food & Drug Admin v. All. For Hippocratic Med.*, 602 U.S. 367, 381 (2024)).

While neither party has raised the issue of standing, the Court will *sua sponte* assess whether Plaintiff had standing under Article III to bring a Motion for Permanent Injunction. *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (As "standing . . . goes to [a] Court's subject matter jurisdiction, it can be raised *sua sponte*."); *Gonzales v. Thaler*, 565 U.S. 134, 141

(2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider [it] *sua sponte*").

Here, Plaintiff is requesting that the "Court issue a permanent injunction to prevent Defendants from deleting, tampering with or improperly placing Plaintiff's e-mail in retention, as such actions could lead to the destruction or alteration of crucial evidence needed for this and any future legal claims." PI Mot. at 7. Plaintiff supports this request with "Legal Argument[s]" where she walks through the elements of a permanent injunction (i.e. irreparable injury, balance of equities etc.) in a conclusory fashion, stating without providing any evidence or legal citations that she has suffered from harm. *Id.* at 7–8.

While the burden to demonstrate an injury in fact sufficient to establish Article III standing is not demanding, it requires more than "conclusory allegations of harm." *See Grinblat v. Frontline Asset Strategies, LLC*, 2023 WL 5002474 at *3 (S.D.N.Y. Aug. 4, 2023). In her Motion Plaintiff has completely and utterly failed to demonstrate that she has suffered from any injuries that would constitute a concrete injury for the purposes of Article III standing. *See generally id.*[10] Her Motion is rife with conclusory allegations of malfeasance and grievances raised at the acts of Defendants without asserting any cognizable harms. *See id.* at 2–8.  Further, as this is a request for injunctive relief, Plaintiff was required to demonstrate that there was a

---

[10] In the alternative, the Court also finds that Plaintiff has not met the elements that she must satisfy in order for the Court to grant her Motion.  "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a Court may grant . . . relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that public interest would not be disserved by a permanent injunction" *Id.* Here, there is no evidence that her injury, has occurred, let alone that it is in irreparable. *See generally* PI Mot. Dkt. No. 82-1 ("Wyld Declaration"). Further, there is no indication that other remedies, such as Discovery requests under Rule 34 are not available.

likelihood that she would be the subject of future harm – which she has not done. *See generally id.*

 The Court therefore finds that Plaintiff has not demonstrated the existence of an injury in fact in her Motion requesting a Permanent Injunction. Plaintiff's Motion for Permanent Injunction is therefore denied without prejudice.

## VI. CONCLUSION

 Accordingly, it is hereby:

 **ORDERED**, that Defendants' motion for summary judgment, Dkt. No. 63, is **GRANTED** and Plaintiff's claims against Defendants are accordingly **DISMISSED,** and it is further

 **ORDERED,** that Plaintiff's Motion for a Permanent Injunction is **DENIED without prejudice**, and it is further

 **ORDERED** that the Clerk close this action

 **ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

 **IT IS SO ORDERED.**

DATED: September 30, 2025
   Albany, New York

LAWRENCE E. KAHN
United States District Judge